IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |  |
|---|---|---|
| **KENNETH WATSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 16−cv−1217−NJR |
| | ) | |
| **C/O DODD,** | ) | |
| **C/O MCBRIDE,** | ) | |
| **LT JACKSON,** | ) | |
| **C/O ANDERTON,** | ) | |
| **C/O NALLEY,** | ) | |
| **NURSE MCCAIN,** | ) | |
| **C/O APARICIO,** | ) | |
| **MICHAEL SANDERS,** | ) | |
| **MAJOR PLOTTS, and** | ) | |
| **JASON GARNETT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Kenneth Watson, an inmate in Pontiac Correctional Center ("Pontiac"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 that allegedly took place at Big Muddy Correctional Center ("Big Muddy"). According to the Complaint, Plaintiff was attacked and sexually assaulted by defendant corrections officers Dodd and McBride, and his efforts at obtaining medical care and reporting the incident were prevented or ignored by the other defendants. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which reads:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## The Complaint

In his Complaint (Doc. 1), Plaintiff claims he was unjustifiably attacked by corrections officers McBride and Dodd on July 17, 2016. (Doc. 1, p. 16). According to the Complaint, both Dodd and McBride beat Plaintiff in the shower, and Dodd grabbed and squeezed Plaintiff's penis and testicles "very hard." *Id.* Despite his cries for help, Plaintiff alleges Jackson and Plotts observed this attack without intervening to assist Plaintiff. *Id.* Anderton was also allegedly present during the altercation. *Id.* Plaintiff claims Dodd and McBride then dragged him by a lead

cuff to a "chuckhole" where they forced his wrists through and yanked on his cuffs "with extreme force" causing the cuffs to cut deep into his wrists. *Id.* When Anderton removed the cuffs, Jackson allegedly told Plaintiff to undress for a strip search. *Id.* According to the Complaint, Plaintiff refused this command because Dodd and McBride, his alleged assailants, were still present, he "wasn't getting naked in front of 2 men that just beat [him] and sexually assaulted [him]," and he wanted to see a nurse and PREA[1] to report his sexual assault. (Doc. 1, pp. 16-17). Plaintiff allegedly complied and removed his clothing after Plotts threatened him with a "Tact Team" and Dodd and McBride left the area. (Doc. 1, p. 17).

Plaintiff claims he told Nalley about the alleged sexual assault. *Id.* At this point, Plaintiff allegedly requested to see a nurse and PREA and to be allowed to file a police report in Nalley's office on Dodd and McBride for the attack. (Doc. 1, pp. 17-18). Nalley allegedly told Plaintiff to go to his cell and that he would return for him in a few minutes. (Doc. 1, p. 18). Plaintiff complied but allegedly never heard from Nalley again. *Id.* Plaintiff was instead visited approximately one hour later by McCain, a nurse, and Jackson. *Id.* Plaintiff told them both about the alleged attack and sexual assault. *Id.* McCain told Plaintiff she did not see any injuries, though Plaintiff alleges she did see injuries, at least deep cuts on his wrists from the cuffs, and "chose to protect her co-workers/friends and not document [his] injuries or treat them." (Doc. 1, p. 19). Plaintiff further alleges McCain failed in her duty to report his accusation of sexual assault against Dodd. *Id.*

Within one day of the alleged attack, Plaintiff claims that Aparicio and Sanders met with him in their office for an Adjustment Committee hearing on his "ticket." (Doc. 1, pp. 19-20).

---

[1] Plaintiff repeatedly refers to the "PREA" throughout his filings. This refers to the statute commonly known as the Prison Rape Elimination Act. In some instances, Plaintiff seems to reference an entity or office within the prison system that handles prisoner complaints about sexual assault.

3

Plaintiff allegedly told them everything that had happened to him, including the sexual assault and all of the people he told about the events after the fact. *Id.* Despite Plaintiff's alleged request to Aparicio and Sanders to be able to see PREA and file a complaint against Dodd and McBride, and Aparicio and Sanders telling Plaintiff someone would come to talk to him about it, this never occurred, and Aparicio and Sanders allegedly misquoted and underreported Plaintiff's statements to them in their Adjustment Committee report. (Doc. 1, p. 20). For example, their report indicated that Plaintiff refused to uncuff at one point, when Plaintiff says he never told them he refused to uncuff, only strip. *Id.* Plaintiff claims they misreported his statements to them "in order to make things fit their (IDOC) agenda and find [him] guilty of something [he] didn't do." *Id.*

As warden, having the final say on the report of the Adjustment Committee, Garnett also allegedly "tried to cover everything up and make [Plaintiff] do 6 months for some . . . tickets" to protect Dodd and McBride, despite the fact that Plaintiff's allegations of sexual assault were included on the report. (Doc. 1, p. 21). Plaintiff also filed three grievances and submitted several requests at Big Muddy to Healthcare, PREA, mental health, and the warden's office, which went unanswered. (Doc. 1, p. 22). The ARB also allegedly denied Plaintiff's grievances, without a proper investigation, despite his well-documented allegation of sexual assault. (Doc.1, pp. 22-23). Instead, Plaintiff claims they "altered [his] words and made [Plaintiff] look like [he] said things [he] didn't to fit a certain agenda which is to protect an officer." (Doc. 1, p. 23). Plaintiff allegedly was not seen by PREA until September 14, 2016, when he was in Pontiac. (Doc. 1, p. 24). Plaintiff claims that, had the PREA Mandate been followed when he was at Big Muddy, the bruising on his penis, testicles, and chest and the cuts on his wrists from the alleged attack would have been more visible, and his claims "could have been substantiated more clearly." *Id.* Plaintiff

4

seeks monetary damages and injunctive relief in the form of a transfer to Graham Correctional Center and placement in a Correctional Industry Job for the rest of his sentence, a body camera to be worn by IDOC employees at all times, each defendant to be fired, and criminal charges to be filed, presumably against his alleged attackers. (Doc. 1, p. 34).

### Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into six counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

**Count 1** – Plaintiff was subjected to excessive force in violation of the Eighth Amendment when he was unjustifiably attacked by Dodd and McBride on July 17, 2016.

**Count 2** – Anderton, Jackson, and Plotts failed to intervene and protect Plaintiff by failing to put an end to the excessive force used against Plaintiff by Dodd and McBride on July 17, 2016.

**Count 3** – Defendants were deliberately indifferent to Plaintiff's medical needs by failing to treat and/or failing to ensure treatment of the cuts on his wrist, his stomach pain, and the bruising on his penis, testicles, and chest after he sustained these injuries while being attacked on July 17, 2016.

**Count 4** – Plaintiff was subjected to retaliation in the form of a transfer to Pontiac, Plaintiff being found guilty for "bogus" tickets, and Plaintiff having to do "seg time" for reporting the attack by Dodd and McBride.

**Count 5** – Plaintiff was discriminated against in violation of the Fourteenth Amendment in that his claims of sexual assault by a corrections officer were treated differently than would be claims of sexual assault brought by a corrections officer against him.

**Count 6** – Plaintiff was deprived of his due process rights guaranteed by the Fourteenth Amendment when his allegations of physical and sexual assault were not reported or investigated when he was in Big Muddy despite his consistent requests to be seen by PREA starting July 17, 2016.

As discussed in more detail below, Counts 1, 2, 3, and 4 are subject to further review. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

### Count 1–Excessive Force

Plaintiff alleges he was subjected to cruel and unusual punishment in the form of excessive force and sexual assault by Dodd and McBride. The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was *de minimis*, not whether the injury suffered was *de minimis*); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Here, Plaintiff has presented sufficient facts to state a claim of excessive force. Although the prison guards who allegedly beat and sexually assaulted Plaintiff told him to stop resisting at one point, Plaintiff claims that he was not resisting and that these actions were unjustified. (Doc. 1, p. 16). It cannot be determined at this point if this alleged use of force was appropriate or excessive, or if the sexual assault occurred. *See Wilkins*, 559 U.S. at 40. Count 1 will be allowed to proceed against defendants Dodd and McBride.

### Count 2–Failure to Intervene

Under the Eighth Amendment, a correctional officer may be held liable for failing to intervene if he or she has a realistic opportunity to step forward and protect a plaintiff from another officer's excessive force, but fails to do so. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). Plaintiff claims that while he was being assaulted by Dodd and McBride, he called for help to the guards that were present, including Anderton, Jackson, and Plotts. (Doc. 1, p. 16). Instead of intervening, Anderton, Jackson, and Plotts allegedly stood by and allowed the attack to continue. *Id.* This states a viable failure to intervene claim against Anderton, Jackson, and Plotts, so Count 2 will be allowed to proceed against them.

### Count 3–Deliberate Indifference

Plaintiff claims defendants were deliberately indifferent to his medical needs. The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. U.S. CONST., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). Prison conditions that deprive inmates of basic human needs, such as adequate nutrition, health, or safety, may constitute cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *see also James*, 956 F.2d at 699. Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates deliberate indifference to the serious medical needs of an inmate. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). To establish deliberate indifference to a medical condition, a prisoner must show a condition that is sufficiently serious (objective component) and that an official acted with a sufficiently culpable state of mind in failing to address the condition (subjective component). *Id.* Whether an injury is serious enough is a very fact specific inquiry—seriousness may be shown if an ordinary doctor

opined an injury warranted treatment, if an injury significantly impacted an individual's daily activities, or if an injury caused chronic or substantial pain, among other things. *Id.*

As to the subjective component, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002). If an official reasonably responds to a risk, even if harm was not averted, deliberate indifference does not exist. *Id.* A claim for medical negligence does not amount to deliberate indifference. *Gutierrez*, 111 F.3d at 1369.

Plaintiff has alleged that he sustained sufficiently serious injuries as his "penis, wrist, and stomace [*sic*] were hurting very badly" after the alleged attack. (Doc. 1, p. 10). He claims he had bruising on his penis, testicles, and chest and deep cuts on his wrists that went entirely untreated. (Doc. 1 , pp. 19, 24). At this early stage, these allegations are enough to satisfy the objective component of the deliberate indifference analysis.

With respect to the subjective component, the only defendant who apparently saw Plaintiff for his injuries at Big Muddy was McCain, the nurse who saw him soon after he was allegedly attacked and sexually assaulted. Plaintiff's factual assertions about McCain's refusal to examine him, acknowledge his visible wrist injuries, or provide even the bare minimum of care are sufficient to allow this claim past screening. Although a nurse is not held to as stringent of a standard as a doctor, a nurse still has a duty to provide a reasonable amount of care within the bounds of his or her position. *Perez v. Fenoglio*, 792 F.3d 768*,* 779 (7th Cir. 2015) (noting that a nurse's duty could include administering treatment if authorized to do so, or contacting higher authorities if care he or she was authorized to provide would be so inadequate that awaiting

8

further authorization could be harmful). Accordingly, Count 3 will be allowed to proceed against McCain for deliberate indifference to a serious medical condition.

Plaintiff has also sufficiently stated claims against those guards who failed to respond to his pleas that he needed medical treatment immediately following his attack. Even though prison guards have a lesser degree of responsibility for the provision of medical care than other prison employees such as a nurse or doctor, a guard may still be deliberately indifferent if he or she blatantly disregards a medical need. This is especially true if the guard's own conduct contributes to the need for medical attention. *See Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996) (holding that a prison guard who uses excessive force has a duty to secure appropriate medical care for the injured inmate). Defendants Anderton, Jackson, Plotts, Dodd, McBride, and Nalley were all present during and/or immediately after the alleged attack. Anderton, Jackson, and Plotts allegedly failed to intervene to prevent further injuries to Plaintiff during the attack, and Dodd and McCain allegedly committed it. These defendants therefore allegedly contributed to Plaintiff's injury, so they should have secured appropriate care for Plaintiff after the fact. Though Nalley did not necessarily contribute to the attack, he was allegedly informed of the attack by Plaintiff immediately after it happened and misled Plaintiff into believing he would get him help, only to abandon him in his cell. His actions may constitute a blatant disregard for Plaintiff's medical needs as well. Thus, Count 3 will also be allowed to proceed against Anderton, Jackson, Plotts, Dodd, McBride, and Nalley, to allow for development of a more comprehensive factual record.

**Count 4–Retaliation**

Plaintiff argues that he was disciplined and then transferred in retaliation for complaining of and attempting to report the alleged attack and sexual assault on him by Dodd and McBride, in

violation of his rights under the First Amendment. Prisoners have a First Amendment right to free speech, *see Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125 (1977); *Martin v. Brewer,* 830 F.2d 76, 77 (7th Cir. 1987), and restrictions on that right will be upheld only if they are "reasonably related to legitimate penological interests." *See Thornburgh v. Abbott,* 490 U.S. 401, 413 (1989) (citing *Turner v. Safley,* 482 U.S. 78, 89 (1987)); *Massey v. Wheeler,* 221 F.3d 1030, 1035 (7th Cir. 2000). Further, prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir. 2000); *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000) ("a prison official may not retaliate against a prisoner because that prisoner filed a grievance"); *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory transfer); *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (retaliation for filing lawsuit); *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987) (per curiam) (retaliation for filing suit).

"A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman,* 226 F.3d at 573 (citation omitted). In this case, Plaintiff alleges that defendants "found [him] guilty for bogus tickets," made him "do seg time," and transferred him from Big Muddy "to 'protect' C/O McBride" after Plaintiff attempted to report the alleged attack on him. (Doc. 1, p. 24). Such a chronology arguably presents a colorable claim of retaliation; thus, the Court is unable to dismiss this retaliation claim at this point in the litigation. 28 U.S.C. § 1915A; *see Zimmerman,* 226 F.3d at 574 (reversing district court's § 1915A dismissal because inmate's allegations established that "the exercise of his [First Amendment] right was closely followed by the retaliatory act"). The defendants conceivably responsible for the alleged acts of retaliation include Aparicio, Sanders, and Garnett,

as they were allegedly involved in the Adjustment Committee process from which Plaintiff was disciplined after the alleged attack, and in which they allegedly altered what he did and said to "fit their agenda" and "cover everything up" to protect Dodd and McBride. (Doc. 1, p. 21). Count 4 will proceed against Aparicio, Sanders, and Garnett.

### Count 5–Discrimination

Plaintiff alleges he was discriminated against in violation of the Fourteenth Amendment, in that "if it [were him] sexually assaulting an officer or beating them things would have been handled totally different than how they were" when it was Plaintiff being allegedly assaulted by an officer. (Doc. 1, p. 24). "To show a violation of the Equal Protection Clause, plaintiffs must prove that the defendants' actions had a discriminatory effect and were motived by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001). Actions may have discriminatory effect when they cause a plaintiff to be treated differently from other similarly situated individuals. *Id.* at 636. Further, to state a claim for violation of the Equal Protection Clause, plaintiffs usually must allege that they are members of a "suspect class." *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009).

A plaintiff can also allege that a defendant discriminated against him in particular—so called "class-of-one" claims. Such claims require the plaintiff to allege that "the plaintiff has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). To plausibly allege such a claim, the "plaintiff must negate any reasonably conceivable state of facts that could provide a rational basis." *Jackson v. Village of Western Springs*, 612 F. App'x 842, 847 (7th Cir. 2015).

It is not clear what Plaintiff believes the claimed discrimination is based upon–his status

as a prisoner or as a "class of one." Plaintiff has not alleged that he is in a suspect class, and his status as a prisoner does not render him in one. *Johnson v. Daley*, 339 F.3d 582, 585-586 (7th Cir. 2003) ("Prisoners are not a suspect class; conviction of crime justifies the imposition of many burdens."). Further, Plaintiff has not negated any reasonably conceivable set of facts that could provide a rational basis for his complaints being allegedly ignored when, in a hypothetical situation where the tables would be turned, an officer's complaints would not be. In fact, Plaintiff has not provided any reason why this Court should consider him to be "similarly situated" to that hypothetical officer. Further, this Court is not in the business of speculating about what might have happened in a different scenario entirely, just to substantiate Plaintiff's claims. *See Twombly*, 550 U.S. at 570 ("Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level."). Plaintiff has therefore failed to state an equal protection claim upon which relief may be granted. Count 5 shall be dismissed with prejudice.

### Count 6–Due Process

Plaintiff claims that his due process rights were violated when his "allegations were not reported or investigated in Big Muddy," specifically citing defendants' failure to follow the PREA Mandate. (Doc. 1, p. 24). With respect to defendants' alleged failure to investigate Plaintiff's more general allegations of assault, "a state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1995). In fact, the Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich,* 681 F.2d 1091 (7th Cir. 1982). Prison officials thus incur no liability under § 1983 if they fail or refuse to investigate a prisoner's complaints or grievances. *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005)

(inmate's claim that prison officials failed to investigate his grievances that mailroom and security staff was stealing his property was indisputably meritless because inmate did not have a due process right to an investigation). Because "inmates do not have a due process right to have their claims investigated at all," Plaintiff does not state an adequate due process claim for failure to investigate his alleged assault. *See Wilkins v. Illinois Dep't of Corr.* No. 8-cv-732-JPG, 2009 WL 1904414, at *9 (S.D. Ill. July 1, 2009).

With respect to the defendants' alleged failure to follow the PREA Mandate to fully investigate Plaintiff's allegations of sexual assault, it is true that prison officials have a duty under the Constitution to protect prisoners from sexual assault. *Farmer v. Brennan*, 511 U.S. 825 (1994). However, the Constitution does not require officials to investigate or otherwise correct wrongdoing after it has happened. *Whitlock v. Brueggemann*, 682 F.3d 567, 588-89 (7th Cir. 2012); *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). "Further, PREA does not give prisoners a personal right to sue for an official's failure to comply with the Act's requirements." *Garness v. Wisconsin Dep't of Corr.*, No. 15-cv-787-BBC, 2016 WL 426611, at *2 (W.D. Wis. Feb. 3, 2016) (citing *Ross v. Gossett*, No. 15-CV-309-SMY-PMF, 2016 WL 335991, at *4 (S.D. Ill. Jan. 28, 2016)). *See also J.K.J. v. Polk Cty.*, No. 15-cv-428-WMC, 2017 WL 28093, at *12 (W.D. Wis. Jan. 3, 2017) ("[T]here is no private right of action under the PREA."). Count 6 shall be dismissed with prejudice.

### Pending Motions

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3), which is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for a decision.

Plaintiff has filed a Motion for Status Report (Doc. 7), which is **DENIED** as moot, as this Order provides the current status of the case.

Plaintiff has filed a Motion Demanding Response from Court, which is **DENIED** as moot, as this Order constitutes a response from the Court regarding Plaintiff's Complaint.

### Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **DODD** and **MCBRIDE**.

**IT IS FURTHER ORDERED** that **COUNT 2** shall **PROCEED** against **ANDERTON**, **JACKSON**, and **PLOTTS**.

**IT IS FURTHER ORDERED** that **COUNT 3** shall **PROCEED** against **MCCAIN**, **ANDERTON**, **JACKSON**, **PLOTTS**, **DODD**, **MCBRIDE,** and **NALLEY**.

**IT IS FURTHER ORDERED** that **COUNT 4** shall **PROCEED** against **APARICIO**, **SANDERS**, and **GARNETT**.

**IT IS FURTHER ORDERED** that **COUNTS 5** and **6** are **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that as to **COUNTS 1**, **2**, **3**, and **4**, the Clerk of Court shall prepare for each defendant: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If any defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by

Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon each defendant (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on the defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings, including a decision on Plaintiff's Motion for Recruitment of Counsel (Doc. 3). Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the

Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 12, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**