UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| KENNETH WATSON, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| vs. | ) | No. 3:16-CV-1217-GCS |
| ALLEN APARICIO, | ) | |
| KHOREY ANDERTON, | ) | |
| JOHN BALDWIN, | ) | |
| DANIEL DODD, | ) | |
| JASON GARNETT, | ) | |
| VENTURES JACKSON, | ) | |
| JEREMEY MCBRIDE, | ) | |
| NICK NALLEY, | ) | |
| ERIC PLOTT, | ) | |
| and MIKE SANDERS, | ) | |
| Defendants.[1] | ) | |

## MEMORANDUM and ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION

This matter comes before the Court on a summary judgment motion filed by Defendant Sandra McCain (Doc. 110) and a motion for summary judgment filed by Defendants Allen Aparicio, Khorey Anderton, John Baldwin, Daniel Dodd, Jason Garnett, Ventures Jackson, Jeremy McBride, Nick Nalley, Eric Plott and Mike Sanders (Doc. 113). Defendants argue that Watson's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) because the factual basis for each of his claims against them call into

---

[1] The Court **DIRECTS** the Clerk of the Court to change the docket to reflect defendants' correct names as contained in their answers (Docs. 53, 62, 83).

question the validity of his convictions on disciplinary tickets he received. Plaintiff Kenneth Watson opposes both motions (Doc. 123, 127). Watson counters his claims are not precluded by *Heck* because they do not challenge the Adjustment Committee's findings and, his claims present genuine issues of material fact that must be decided by a jury. Watson claims that he was beaten, while handcuffed, while he was not resisting, and that the beating resulted in injuries that were not medically treated and/or ignored by Defendants. Based on the reasons delineated below, the Court grants both motions for summary judgment.

On January 2, 2018, Watson, by and through Court assigned counsel, filed an amended complaint against Defendants alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983 that occurred while he was housed at Big Muddy River Correctional Center ("Big Muddy") (Doc. 50).[2] The amended complaint contains the following counts:

    Count I – against McBride and Dodd for cruel and unusual punishment for physically and sexually assaulting Watson by throwing him in a shower, beating him and grabbing and squeezing his penis and testicles;

    Count II – against Jackson, Plott, Anderton and Nalley for failure to protect or intervene;

    Count III – against McBride, Dodd, Jackson, Plott, Nally, Anderton, Aparicio, Sanders, Garnett and McCain for deliberate indifference to Watson's medical needs by ignoring his medical needs (cuts on wrists, stomach pain, bruising on his penis, testicles and chest) after the attack in violation of the Eighth Amendment;

    Count IV - against McBride, Dodd, Jackson, Plott, Nally, Anderton, Aparicio, Sanders, Garnett and McCain for retaliation;

---

[2]     The IDOC's website indicates that Watson is on parole as of May 10, 2019 and that his status is absconder.

Count V – Conspiracy under the First and Eighth Amendment against all Defendants;

Count VI – against all Defendants for intentional infliction of emotional distress; and

Count VII – against McBride and Dodd for conspiracy to commit assault and battery.

## FACTS

Watson's allegations in his amended complaint stem from an altercation that occurred between him and Defendants Dodd and McBride on July 17, 2016, at Big Muddy (Doc. 50). That day, Dodd and McBride escorted Watson to the segregation unit and placed Watson in the segregation shower for a strip search. Defendant Plott walked behind Watson while he was being escorted. Officer Anderton performed the strip search with Dodd and McBride present. After the strip search, Watson was placed in segregation cell 23.

Watson complained of injuries to Defendant Jackson after being placed in the segregation cell. Jackson called the Health Care Unit ("HCU") and requested a nurse see Watson. Jackson was present for the evaluation performed by Defendant McCain. McCain only examined Watson's hands. Watson's encounter with McCain lasted about 5 minutes.

Watson received multiple disciplinary tickets on July 17, 2016. The first disciplinary ticket related to a disagreement with the housing officer in his unit.[3] The

---

[3] On July 18, 2016, Watson pled guilty to this ticket and the Adjustment Committee gave Watson 2 months C Grade and two months segregation. In pleading guilty Watson stated: "I'll take the weight for that ticket." He told C/O Robinson "why don't you take that badge off and step inside this cell? You racist mother fucker." (Doc. 111-5).

citation for intimidation or threats and for insolence to Officer Robinson precipitated Watson being sent to segregation on July 17, 2016. The remainder of the disciplinary tickets (attempted assaulting staff, damage of property, insolence and disobeying a direct order) arose from his conduct after being transported to the segregation holding cell.

On July 18, 2017, the Adjustment Committee held a hearing on the incident and the Final Summary Report indicates that Watson "signed waiver agreeing to hearing date less than 24 hrs. after ticket was served." (Doc. 111-2). After the hearing, Watson was found guilty of the following: "601.Attempt/102 assaulting any person – Staff *Comments: Swung first at R/O McBride*; 202 – Damage Or Misuse of Property; 304 – Insolence; and 403 – Disobeying A Direct Officer." Watson was given 6 months C grade, 6 months segregation, revoke GCC or SGT 3 months, transfer (Disciplinary) and 6 months contact visits restriction. As to the details of the incident, the Summary Final Report found:

> **RECORD OF PROCEEDINGS**
>
> Not guilty – Me and the C/Os who walked be [sic] to Segregation did have some words on the walk but I never swung at McBride(R/O). I did refuse to un-cuff like the Lt. said but only after Dodd and McBride assaulted me and grabbed my nuts in the shower.
>
> **BASIS FOR DECISION**
>
> Based on ODR by R/O J. McBride and R/Lt. V. Jackson. R/O McBride reports escorting I/M Watson to Segregation for an offense in R/2 Housing Unit with the assistance from C/O D. Dodd. R/O reports upon being placed in the Seg shower I/M Watson R74218 began to be combative (detailed in R/Lt's report). R/O reports with the assistance of staff and utilizing a lead cuff, cuffs were removed from I/M Watson. R/O reports as he(R/O) was exiting the Seg shower area, I/M Watson attempted to punch him(R/O) in the face with a closed [fist] through the shower bars. R/O reports I/M Watson's fist missed his(R/O's) face by approx. 6 inches. Pos. ID by R/O using State ID card. R/LT REPORTS INMATE WATSON R74218 WITH BOTH HAND VIOLENTLY

GRAB AND SHAKE THE SEG SHOWER SLIDING DOOR AFTER HE(WATSON) WAS PLACED IN THE SEGREGATION SHOWER TO BE STRIP SEARCHED. R/LT. REPORTS GIVING INMATE WATSON SEVERAL DIRECT ORDERS TO COME OVER TO THE SHOWER CHUCK-HOLE TO BE UNCUFFED AND STRIP SEARCHED, R/LT. REPORTS AFTER HE(WATSON) WAS PLACED IN THE SEGREGATION SHOWER, HE(R/LT) ALONG WITH MCBRIDE AND D. DODD ENTERED THE SHOWER AND PLACED A LEAD CUFF ON THE RESTRAINTS IN ORDER TO GET WATSON TO UNCUFF AND BE STRIPPED. R/LT REPORTS INMATE WATSON RESISTED THE ENTIRE TIME. R/LT/ REPORTS C/O ANDERTON ARRIVED AND ATTEMPTED TO UNCUFF WATSON WITH BOTH C/O MCBRIDE AND C/O D. DODD HOLDING THE LEAD CUFF. R/LT. REPORTS AS ANDERTON REMOVED ONE CUFF AND BEGAN TO REMOVE THE OTHER, WATSON JERKED AWAY FROM ANDERTON CAUSING THE CUFF KEY TO COME INTO CONTACT WITH THE SHOWER BAR AND BREAK. R/LT REPORTS HE THEN ORDERED WATSON TO TAKE OFF HIS OUTER GARMENTS TO BE STIP SEARCHED ACCORDING TO PROCEDURES PRIOR TO BE PLACED IN SEG CELL, WHCH AGAIN HE REFUSED NUMEROUS TIMES BEFORE EVENTUALLY COMPLYING. R/LT REPORTS FOLLOWING THE STRIP SEARCH BY ANDERTON, WATSON WAS PLACED IN SEG CELL 23. LPN S. MCCAIN ASSESSES WATSON DUE TO COMPLAINTS BY WATSON ABOUT HIS HANDS BEING INJURED. LPN MCCAIN NOTED NO INJURIES. WATSON WAS POS ID'D BY R/LT. USING STATE ID CARD.

Defendant Sanders, as chairperson, and Defendant Aparicio signed the Final Summary Report on July 18, 2016, and Defendant Garnett signed the Final Summary Report on July 21, 2016. *Id.*

Watson claims that he was assaulted physically and sexually by Dodd and McBride on July 17, 2016, and that he repeatedly requested a PREA representative after the attack and his requests were denied. Further, Watson testified that he complained to Defendants Nalley and McCain that his genitals were grabbed and squeezed. As a result of the attack by Dodd and McBride, Watson claims he received injuries to his genitals, wrists, stomach and chest.

Watson claims he wrote a grievance concerning Defendants' alleged conduct while at Big Muddy. However, Watson admits that he does not have any evidence that any Defendants saw the grievance he submitted before his transfer from Big Muddy.

Watson was transferred from Big Muddy on August 6, 2018. At the time of transfer, staff at Big Muddy recorded that Watson had no acute physical conditions. Watson arrived at Pontiac Correctional Center ("Pontiac") on August 10, 2016. At this time, staff at Pontiac noted Watson responded "none" in response to the "current complaint" section on the Offender Health Status Transfer Summary.

On September 14, 2016, Watson saw a doctor at Pontiac for investigation of a PREA complaint related to his allegations about the events on July 17, 2016. On September 19, 2016, staff at Pontiac completed an Offender Health Transfer Summary that Watson had no acute physical conditions.

The record reflects that Watson did write a grievance concerning the incident at Big Muddy after he arrived at Pontiac. This grievance was denied by the Administrative Review Board ("ARB"). The ARB found no due process violation and affirmed the conviction for disciplinary tickets. Specifically, the ARB wrote/found:

> This is in response to your grievance received on September 9, 2016, regarding Staff Misconduct (assaulted on 7/17/16 by C/O McBride and C/O Dodd and sexually assaulted by C/O Dodd), which was alleged to have occurred at Big Muddy Correctional Center. . . .
>
> This office has reviewed your grievance dated September 9, 2016, wherein you allege on 7/17/16 you were brought to segregation by C/O McBride and C/O Dodd and issued two tickets that you are not guilty of at all. Your tickets were heard on 7/18/16 and the record of proceeds recorded and put on the record

is not all of what you said. You claim that when Lt. Jackson put you in the shower there is no way that you could have grabbed the shower door with both hands as you were cuffed. When you were taken down in the shower by C/Os McBride and Dodd they began to beat and sexually assaulted you by grabbling your penis and squeezing it with all their might. You allege that you refused to strip your clothes off as you had just been sexually assaulted by C/O Dodd who had grabbed your penis. You claim that during your assault your hands were stuck out the chuckhole and yanked down; which injured your wrist. You told Lt. Jackson you wanted to see a nurse to report the sexual assault and file a complaint with PREA. Nurse McCain came to your cell and did not perform her duties as a nurse as she reported there were no injuries and failed to report your claim of sexual assault. You request to be let out of segregation, charges dropped, GCC restored, Officer Dodd fired, and sent to Centralia or Graham.

This office reviewed the disciplinary report written on July 17, 2016, C/O Robinson citing you for the offenses of 206 – Intimidation Or Threats and 304 – Insolence; along with the corresponding Adjustment Committee's Final Summary Report (#201601285/1 – BMR). And, the disciplinary reports written on July 17, 2016 by C/O McBride and Lt. Jackson citing you for the offense of 601. Attempt of 102 – Assaulting Any Person (staff), 202 – Damage or Misuse of Property, 304 – Insolence and 403 – Disobeying a Direct Order; along with the corresponding Adjustment Committee's Final Summary Report (#2016012861 – BMR).

A review[] of LPN McCain's report notes that when she was called to seg for inmate due to complaint of bilateral thumb numbness from being cuffed, she found he had good range of motion and encouraged him to drop a kite for further complaints.

This office finds no violations of the offender's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offender committed the offenses cited in the reports; grievance denied.

Internal Affairs initiated a PREA investigation which was found to be unsubstantiated; grievance denied. . . . Staff misconduct cannot be substantiated. . . .

(Doc. 114-7).

Watson never had any contact or conversations with Defendant Baldwin except for Defendant Baldwin or his signatory concurring with the ARB's decision. Watson

testified that Nalley was not present for the alleged assault. (Doc. 114-1, p. 14 – Watson's Depo.). Watson also testified that he never talked to Defendant Garnett concerning the incident. *Id.* at p. 15.

In his amended complaint, Watson, *inter alia*, explicitly alleges:

72. Plaintiff agreed, and he went to the Adjustment Committee's Office. There Defendants Aparicio and Sanders conducted the Adjustment Committee hearing on Plaintiff's tickets and grievances. For at least 20 minutes, Plaintiff repeated the events from the day before – from the physical and sexual assaults; to verbal harassment and threats, to several officers' refusal to protect him or intervene in the assaults; to the repeated times that the officers and nurse ignored his requests for medical and PREA attention; to his continuing need for medical care; and finally to the officers and nurse's refusal to file charges for the assaults.

73. Despite this, Defendants Aparicio and Sanders refused to include Plaintiff's statements and allegations in their report as stated by Plaintiff. They omitted several details, and they also altered Plaintiff's words to conceal the crimes and civil violations committed by Defendants. For example, the Adjustment Report stated that Plaintiff refused to "uncuff" after Defendant Dodd grabbed his testicles. However, Plaintiff never said that.

. . .

75. The Adjustment Report created by Defendants Aparicio and Sanders contained multiple false and altered statements that they attributed to Plaintiff.

76. The Adjustment Committee Members Defendants Aparicio and Sanders failed to investigate Plaintiff's grievances and denied them without evidentiary support.

77. The Adjustment Report was sent to Defendant Garnett for review and final decision. Thus, he was aware of Plaintiff's allegations of sexual assault and lack of proper medical attention. Despite this, Defendant Garnett approved the Adjustment Report and denied Plaintiff's grievances.

78. Defendant Garnett did not check to see if Plaintiff was ok after the assaults, nor did he ensure that an investigation into the assaults were underway.

79. Shortly thereafter, Plaintiff was transferred him [sic] from Big Muddy to Pontiac in an effort to protect Defendants McBride and Dodd from Plaintiff's charges and grievances against them.

80. The allegations in the Adjustment Report are false, are not based on evidence, and include intentional alterations of Plaintiff's statements. Because of these intentional lies, Plaintiff served six months in the Segregation Unit.

(Doc. 50, p. 14, 15).

**LEGAL STANDARDS**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin- Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017)(quoting *Anderson*, 477 U.S. at 248). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

In *Heck v. Humphrey*, the Supreme Court held that a § 1983 action for damages is unavailable if success would necessarily imply that a conviction or sentence is invalid unless the underlying conviction or sentence has been reversed on direct appeal, expunged by executive order, or declared invalid on habeas review. 512 U.S. 477, 486-487 (1994). *See also McDonough v. Smith*, 139 S.Ct. 2149, 2157 (2019)(stating that "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a § 1983 plaintiff must first "prove that his conviction had been invalidated in some way.") (citing *Heck*, 512 U.S. at 486). Prisoners challenging their conviction or duration of confinement may bring a habeas corpus action, but "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments[.]" *Heck*, 512 U.S. at486. The Supreme Court extended the *Heck* doctrine to civil rights claims arising out of prison disciplinary hearings. *See Burd v. Sessler*, 702 F.3d 429, 434 (7th Cir. 2012)(noting that claims which "necessarily imply the invalidity of the deprivation of . . . [an inmate's] good time credits" are barred by *Heck* until otherwise invalidated)(citing *Edwards v. Balisok*, 520 U.S. 641, 648 (1997)), abrogated on other grounds, *Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020).

The Seventh Circuit held that *Heck* forbids a prisoner in his civil rights case to challenge a finding in his criminal or prison-discipline case that was essential to the decision in that case; if he insists on doing that, the civil rights case must be dismissed. *See Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011)(citing *Okoro v. Callaghan,* 324 F.3d

488, 490 (7th Cir. 2003)). *Heck* is analogous to collateral estoppel in this way: "an issue determined with finality in a full and fair adjudicative proceeding (and essential to the decision in that proceeding) cannot be reopened in a subsequent case." *Id.* In order to determine whether the *Heck* rule applies, the Court must compare the factual basis of this lawsuit with the essential facts that supported the disciplinary action. *See Viramontes v. City of Chicago*, 840 F.3d 423, 428 (7th Cir. 2016). If the factual basis of the claim and the disciplinary decision are contradictory, the lawsuit must be dismissed without prejudice as long as the disciplinary decision remains in place. *Id.*

Here, Defendants move for summary judgment arguing that all of Watson's claims are barred by *Heck* and its progeny as his claims arise out of facts for which he was convicted/disciplined. Watson counters that his claims present genuine issues of material fact that must be decided by a jury and that his claims are not barred by *Heck*. Contrary to Watson's arguments, the relevant inquiry is what facts were relevant to him being found guilty of the charges at the Adjustment Committee hearing on July 18, 2018.

On July 18, 2016, the Adjustment Committee found Watson guilty of Attempt/Assaulting Any Person-Staff, Swung fist at R/O McBride, Damage or Misuse of Property, Disobeying a Direct Order and Insolence. The Adjustment Committee also set forth its reasons for finding Watson guilty. Watson's discipline has not been overturned or expunged. Watson's conduct on July 17, 2016, resulted in a punishment that included, *inter alia*, a loss of good time credits.

As to Watson's conduct on July 17, 2016, the Adjustment Committee specifically found: (1) Watson became combative upon being put in the shower; (2) after the handcuffs were removed, Watson attempted to punch Defendant McBride in the face through the bars of the segregation shower area; (3) Watson resisted Defendant McBride and Defendant Jackson's efforts to attach a lead to his handcuffs; (4) Defendant Anderton tried to uncuff Watson with Defendants McBride and Dodd holding the lead cuff, and that Defendant Anderton removed one cuff and began to remove the other, Watson jerked away causing the cuff key to come into contact with the shower bar and break; (5) while in the segregation cell, Defendant McCain assessed Watson due to his complaints about his hands, and Defendant McCain found Watson suffered no injuries; and (6) there was no finding that staff beat Watson, sexually assaulted Watson or that he suffered any injuries despite Watson's statement that "Dodd and McBride assaulted me and grabbed my nuts in the shower." (Doc. 111-2).

In order to prove his case (all claims/counts), Watson would have to prove facts that call into question the validity of each of the above findings related to the incident on July 17, 2016. All of the counts in his amended complaint are dependent on this showing. Watson alleges that Defendants Dodd and McBride beat him, Defendant McBride choked him, and that Defendant Dodd sexually assaulted him by squeezing his genitals. Moreover, Watson contends that some Defendants failed to protect him from this assault. Watson further alleges that he was denied medical treatment, that Defendants retaliated, and that Defendants conspired against him. All of Watson's claims arise out of facts for

which he was found guilty and convicted. In particular, the Adjustment Committee found Watson – not McBride and Dodd – guilty of attempting to assault Defendant McBride, damage or misuse of property, insolence and disobeying a direct order which directly contradicts Watson's claims before the Court.

Furthermore, if the Court were to find for Watson on any of his claims, it would necessarily imply the invalidity of each of the disciplinary charges against Watson as well as the factual findings of the Committee. Any argument by Watson that the disciplinary proceedings did not comport with due process or were not fair are barred by *Heck* because any judgment from this Court finding that the disciplinary hearings were unconstitutional would necessarily imply the invalidity of the disciplinary decision resulting from that proceeding. Basically, Watson contests the entire narrative of the events of July 17, 2016 as adjudicated by the Adjustment Committee as based on lies and not based on evidence. He seeks his version of the July 17, 2016 incident to be taken as the truth and seeks to have Defendants' version of the incident, which was memorialized in the Final Summary Report by the Adjustment Committee, to be determined as falsehoods. *Heck* does not allow for such a result.

## Conclusion

Accordingly, the Court **GRANTS** Defendants' motions for summary judgment (Doc. 110, 113). The Court **DISMISSES without prejudice** Watson's Amended Complaint as barred by *Heck v. Humphrey* and its progeny. The Court **DIRECTS** the Clerk of the Court to enter judgment and close the case.

**IT IS SO ORDERED**.

**DATED: February 28, 2020.**

Digitally signed by Magistrate Judge Gilbert C. Sison
Date: 2020.02.28 13:45:21 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**